# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>VERONICA KELLY,<br><br>    Defendant. | Case No. CR12-2024<br><br>ORDER FOR PRETRIAL DETENTION |

On the 10th day of September, 2012, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Special Assistant United States Attorney Lisa C. Williams. The Defendant appeared personally and was represented by her attorney, Jonathan B. Hammond.

## I. RELEVANT FACTS AND PROCEEDINGS

On August 22, 2012, Defendant Veronica Kelly was charged by Indictment (docket number 15) with conspiracy to distribute heroin. At the arraignment on September 5, 2012, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on November 5, 2012.

At the hearing, Special Agent Kelly Meggers of the Iowa Division of Narcotics Enforcement testified regarding the circumstances underlying the instant charges.[1] Defendant is named in a conspiracy to distribute heroin in Waterloo, Iowa. In May 2010, DEA Task Force officers were introduced to Lucious Simmons and began purchasing heroin from him. As part of the investigation of the drug conspiracy, law enforcement placed wiretaps on telephones, and learned that Arthur Scott was a major source for heroin in a large organization of mid-level and lower-level drug dealers. In April 2011, numerous

---

[1] Agent Meggers is currently assigned to the DEA Drug Task Force in Cedar Rapids, Iowa.

arrests were made and, according to Meggers, some of the mid-level and lower-level dealers "stepped up" to take a larger role in the drug conspiracy, including Defendant.

Special Agent Meggers testified that Defendant was present in the passenger seat of a car during a controlled transaction for the purchase of heroin in which the driver of the car, co-defendant Mavia Walker, sold heroin to an undercover officer. Meggers further testified that another controlled transaction for the purchase of heroin was conducted at Defendant's home, although Defendant was not present at the time of the transaction. Meggers indicated that Defendant came to the authorities stating that she wanted to cooperate, and that Defendant admitted to using and receiving heroin, and "middling" deals of user-quantities of heroin. Meggers further testified that other sources confirmed that Defendant's "middling" included both dealing heroin directly as well as facilitating transactions between users and dealers. Lastly, Meggers stated that other defendants involved in the conspiracy purchased heroin from Defendant. Following her arrest on September 5, 2012, Defendant admitted assisting Mavia Walker in the distribution of heroin.

According to the pretrial services report, Defendant is fifty-seven years old. She was born in Waterloo, Iowa, where she has lived her entire life. The Defendant has three sisters, all of whom reside in Waterloo as well. Prior to her arrest, the Defendant had been living at her sister's residence, but told the pretrial services officer that she would reside with her mother if released. Defendant is currently single, though she has been married twice. Defendant has six adult children: five daughters and one son.

In 2009 and 2010, Defendant worked as head cook at Bishop's Restaurant. From October 2011 to February 2012 she was employed as a care coordinator at Steps to Success counseling center. Since February 2012 she has been unemployed. Defendant suffers from high blood pressure and back pain, but is otherwise in good physical health. For the past four months, Defendant has been receiving mental health treatment at Black Hawk

Grundy Mental Health Center for depression and kleptomania, for which she was prescribed Prozac.

Defendant denied having any issues with alcohol. Defendant reported using cocaine daily during a twelve-month period between 2005 and 2006, but denied using it since. Defendant reported using heroin daily for the past eighteen months, with the last use being the day prior to her arrest. In 2009, Defendant underwent a substance abuse treatment program through Pathways Behavioral Services. Defendant stated that she is currently scheduled to undergo a substance abuse evaluation at Pathways Behavioral Services on September 11, 2012.

Defendant has an extensive criminal history. In November 1976, Defendant was charged and later convicted of shoplifting and sentenced to five years in prison. She was released on parole in 1977, but had her parole revoked in January 1979. She "escaped" for one day in May 1979. She was paroled again in June 1980 and discharged from parole in November 1981.

While that case remained pending, in December 1976, Defendant was charged and later convicted of larceny and possession of a controlled substance, and was sentenced to one year and thirty days in jail. In the same month, Defendant was charged again and later convicted of possession of a controlled substance and sentenced to thirty days in jail, though that sentence was suspended. In June 1978, while on parole for the shoplifting offense, Defendant was charged and later convicted of conspiracy and sentenced to two years in prison. In August, 1978, while on parole, Defendant was charged and later convicted of theft in the third degree, and received a five-year prison term. She was paroled in 1980 and discharged from parole in 1981.

In January 1982, Defendant was charged and later convicted of theft in the third degree and sentenced to two years in prison. She was paroled in March 1984. In May 1984, while on parole, Defendant again was charged and later convicted of theft in the third degree and sentenced to two years in prison. She was paroled in February 1987, but

her parole was revoked in December 1988. She was paroled again in February 1990 and discharged from parole in March 1991.

In December 1984, while on parole and while a third degree theft charge remained pending, she was charged and later convicted of criminal mischief in the fourth degree. Once in July 1985, and twice more in January 1986, Defendant was charged and later convicted of theft in the third degree and sentenced to two years in prison. In May 1988, while on parole in three separate cases, Defendant was again charged and later convicted of theft in the third degree and sentenced to two years in prison. In December 1988, Defendant was charged with theft in the fourth degree, although the disposition of that charge is unknown.

By March 1991, Defendant was no longer on parole and had no charges pending. In October 1992, Defendant was charged and later convicted of extortion and sentenced to five years in prison, though the sentence was ultimately reconsidered and reduced to intensive supervision for two to five years. Defendant was discharged from parole in November, 1997. In March 2000, Defendant was charged and later convicted of theft in the third degree, and sentenced to two years in prison, which was suspended, and two years probation. In July 2001, while on probation, Defendant again was charged and later convicted of theft in the third degree.

In December 2002, Defendant was charged and later convicted of theft in the third degree. With respect to that conviction, Defendant failed to appear for an initial appearance and a warrant was issued and served. Defendant later failed to appear for a pretrial conference and a warrant was issued and then voided five days later. Defendant was sentenced to two years in prison. In July 2005, Defendant was charged and later convicted of harassment in the third degree. In September 2005, Defendant was again charged and later convicted of theft in the third degree and sentenced to two years in prison, which was suspended, with two years probation, and community corrections for an unknown period and was fined $500.00. In November 2005, while that case was

pending, Defendant was again charged and later convicted of theft in the third degree and sentenced to two years in prison and a $500 fine, both of which were suspended, and two years probation.

In November 2008, Defendant was charged and later convicted of theft in the third degree, and sentenced to two years in prison, which was suspended, and two years of probation. On September 3, 2009, Defendant was found in violation of probation. In July 2009, while on probation, Defendant was charged and later convicted of theft in the fifth degree. In August 2009, also while on probation, Defendant was twice charged and later convicted with theft in the third degree, for which she was sentenced to two years in prison. In that same month, Defendant was charged and later convicted of assault. Defendant was paroled in October 2010 and discharged from parole in June 2011. In June 2012, Defendant was charged with theft in the third degree. That case is currently pending in state court.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of

conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings,

and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The Government has the burden of proof in this regard. It is aided in certain cases, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). For example, if the Court finds there is probable cause to believe that the person committed a drug offense for which a maximum term of imprisonment of ten years or more is applicable, or possessed a firearm in furtherance of a drug trafficking crime, or committed certain specified offenses involving a minor victim, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(A)(B) and (E). In a "presumption case," the defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id.* *See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

## B. Analysis

Turning to the facts in the instant action, Defendant is charged with conspiracy to distribute heroin. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to § 3142(f)(1)(C).

Regarding the second step, pursuant to § 3142(e)(3)(A), there is a rebuttable presumption in favor of detention. Regarding the weight of the evidence, it is difficult for the Court in a detention hearing to weigh the evidence of an alleged conspiracy. The Court notes, however, that several sources, including Defendant herself, admitted to

Defendant possessing, using, and "middling" heroin in Waterloo. Agent Meggers testified that Defendant allowed her home to be used as a place for dealing heroin, and several sources indicated that at some point Defendant had either sold them heroin or facilitated the sale of heroin between them and other individuals involved in the conspiracy. Further, Defendant was present at a controlled purchase of heroin by an undercover agent.

As a general proposition, the distribution of drugs constitutes a general danger to the community. The Court is particularly concerned with the distribution of heroin because its use often leads to severe addiction and frequently results in overdose and death. Defendant has past criminal convictions for possession of a controlled substance, and admitted to being a long-time heroin addict. Further, the Defendant has continually violated both parole and probation for over thirty years, and twice a warrant was issued in response to Defendant's failure to appear at court proceedings. Additionally, Defendant has committed additional crimes while charges were pending. The Court no confidence that Defendant would comply with the terms and conditions it would impose if she were released. Therefore, based on the serious nature and circumstances of the offense, Defendant's substantial criminal record, her history of violating pretrial release, probation, and parole, her long-term heroin use, and the rebuttable presumption, the Court finds that Defendant should be detained pending trial

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court finds that Defendant should be detained pending trial. Defendant was advised in open court of her right to file a motion with the District Court for revocation or amendment of this Order.

## III. ORDER

IT IS THEREFORE ORDERED as follows:

1.     The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2.     The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3.     On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4.     The time from the Government's oral motion to detain (September 5, 2012) to the filing of this Ruling (September 12, 2012) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 12th day of September, 2012.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA